UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOLLY WINN, on behalf
of N.G.,

      Plaintiff,

v.                          CASE No. 8:07-CV-938-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments on behalf of her son.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not identified reversible error, the decision will be affirmed.

I.

Nickolas Gordillo was born on August 10, 1998, and was seven years old at the time of the administrative hearing (Tr. 89, 485). The plaintiff,

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

who is the child's mother, has filed a claim for supplemental security income. She alleges that the child is disabled due to attention deficit hyperactive disorder, oppositional defiant disorder, obsessive compulsive disorder, multiple allergies, and frequent sinus infections (Tr. 79). The claim was denied initially and upon reconsideration.

The child's mother, at her request, then received a de novo hearing before an administrative law judge. Following the hearing, the law judge found that the child, who has an above average IQ, suffers from severe impairments of oppositional defiant disorder, attention deficit hyperactive disorder, and allergies (Tr. 26). The law judge concluded, however, that the child does not have an impairment which meets, or equals, "the criteria of any Section of the Listing of Impairments" (Tr. 27). The law judge also determined that "the child does not functionally equal, singly or in combination, any listed impairment" (Tr. 30). The law judge, therefore, determined that the child was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R.

416.924(a). The first step is to determine whether the child is actually working at substantial gainful activity. 20 C.F.R. 416.924(b). If not, the second step asks whether the child has a severe impairment. 20 C.F.R. 416.924( c). If he does not, the child is considered not disabled. Id. If there is a severe impairment, the third, and final, step in the analysis is to determine whether the child has an impairment that meets, medically equals, or functionally equals, a set of criteria in the Listing of Impairments in Appendix 1. 20 C.F.R. 416.924(d). If the child does, then he is deemed disabled. 20 C.F.R. 416.924(d)(1). If he does not, then he will be found not disabled. 20 C.F.R. 416.924(d)(2).

When determining functional equivalence, a child's limitations in the following six domains of functioning are evaluated: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being. 20 C.F.R. 416.926a(b)(1). An impairment functionally equals a listed impairment if the plaintiff shows that the child has an extreme limitation in one, or a marked limitation in two, of six domains of functioning. 20 C.F.R. 416.926a(a). A marked limitation is one that interferes seriously with the child's ability to

independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(2)(i). It means a limitation that is more than moderate, but less than extreme. Id. An extreme limitation, which is the rating given to the worst limitations, is one that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(3)(i).

In this case, the law judge discussed the child's abilities in the six domains of functioning, finding that the claimant had less than marked limitations in the domains of attending and completing tasks, interacting and relating with others, and health and well-being (Tr. 28, 29, 30). The law judge determined that the plaintiff had no limitation in the domains of acquiring and using information, moving about and manipulating objects, and caring for himself (id.).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial

evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

In this case, the law judge found that the child has oppositional defiant disorder, attention deficit hyperactive disorder, and allergies, but concluded that he was not disabled (Tr. 31). The plaintiff asserts that the law judge "failed to fully and adequately weigh or develop the substantial evidence in this matter" and "failed to make adequate credibility determinations in this matter" (Doc. 23, p. 2). Neither of these undeveloped assertions warrants reversal of the law judge's decision.

A. The plaintiff's first contention is that the law judge "failed to fully and adequately consider nor [sic] evaluate the substantial evidence of record" (id., p. 7). Other than a specific challenge to the law judge's rejection of a Global Assessment of Functioning ("GAF") score, which is baseless, this argument comprises merely a recitation of general legal principles (id., pp. 8, 11-12).

The plaintiff's contention is appropriately disregarded for insufficient development. Thus, as the Commissioner correctly responds, other than challenging the law judge's evaluation of a GAF score, the plaintiff has not identified what evidence was not properly considered or evaluated,

much less provide citations to the record to support her contention (Doc. 24, pp. 6-9).[2]

Moreover, the plaintiff does not even identify the theory under which the child is allegedly disabled. Thus, the plaintiff does not argue whether the record purportedly shows that the child meets, or medically equals, or functionally equals, a listing. Further, to the extent that the plaintiff contends that the child's impairments functionally equal a listing, she has failed to identify the domains in which he has marked or extreme limitations.

The plaintiff "bears the burden of proving that [the child] is disabled, and consequently, [s]he is responsible for producing evidence in support of h[er] claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). See also Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987)(the plaintiff must make a particularized showing that the child meets, or equals, a listing). Further, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." See Dyer v. Barnhart, 395 F.3d at 1206, 1211 (11th Cir. 2005). Therefore, the

---

[2]Notably, although the plaintiff faults the law judge's consideration of the evidence, she, inconsistently, adopts the law judge's summary of the evidence as her own (Doc. 23, p. 3).

plaintiff does not state a colorable claim for reversal of the law judge's decision by merely stating in a vague, conclusory manner that all of the evidence was not "fully and adequately" weighed.

Moreover, the plaintiff was warned in the scheduling Order that her argument had to "identify with particularity the discrete grounds upon which the administrative decision is being challenged," which grounds "must be supported by citations to the record of the pertinent facts," and that the failure to do so would cause her argument to be disregarded (Doc. 13, p. 2). Consequently, the plaintiff's failure to specify the evidence that the law judge purportedly did not evaluate properly is fatal to this argument.

Additionally, to the extent that the plaintiff's arguments can be discerned, they lack merit. Thus, the plaintiff cites to the legal proposition that the law judge must specify the weight given to the opinions of treating physicians (Doc. 23, p. 8). If she is suggesting that the law judge failed to do that in this case, such a contention is contradicted by the record. In this regard, the law judge stated (Tr. 25):

> [T]he undersigned has given significant weight to the opinion of claimant's treating doctor's [sic] who has prescribed the right medication to control claimant's attention deficit hyperactivity disorder to where he is able to successfully perform in

-8-

> school, as well as relate to teachers and peers. Dr. Lupo submitted a report on April 20, 2004, that claimant was progressing well and had functioned much better at home and in the classroom (Exhibit 11F). The claimant continued to be followed by Dr. Colon for his attention deficit disorder and normal childhood illnesses. Dr. Colon opined that claimant was doing very well with his medication and was not having any side effects. The claimant's behavior had greatly improved in school (Exhibit 13F).

Since the evidence from the treating physicians indicates that the child's condition improved significantly after he was placed on medication (see, e.g., Tr. 282, 307, 331), their notes support the law judge's decision and undercut the contention that the law judge failed to consider properly the opinions of the treating sources. If the plaintiff had in mind a failure by the law judge to evaluate adequately the opinions of other medical providers, she failed to identify them and, therefore, the argument is abandoned.[3]

---

[3] The plaintiff has also argued that "[i]t appears ... the Commissioner fails to consider that the [child's] problems, their signs and their symptoms, may wax and wane" (Doc. 23, p. 12). In this connection, she contends that "[i]t is only necessary that the periods of debilitation are frequent enough and severe enough to significantly impact the claimant's function for a significant portion of the time" (id.). The plaintiff does not cite any legal authority in support of this proposition or identify any record evidence showing that the child's functioning falls within that category (see id.). Therefore, this contention is similarly disregarded for insufficient development.

As indicated, the only specific challenge to the law judge's evaluation of the medical evidence in this case concerns a GAF score of 30 (Doc. 23, p. 11). A physician at Mental Health Care, Inc., who does not appear to be a treating physician, assigned the child a GAF of 30 on July 26, 2004, in response to the claimant's "emergency" visit with his father, who stated that the child was "out of control" (Tr. 457-59). The plaintiff argues that the law judge impermissibly assumed that the GAF score of 30 was a typographical error and, by doing so, the law judge "arbitrarily substitute[d] his own hunch or intuition for the diagnoses of a medical professional" (Doc. 23, pp. 11-12). This contention is frivolous.

The law judge expressly stated that he was rejecting the GAF score of 30 because it was inconsistent with the record evidence (Tr. 25). See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Further, the law judge gave a detailed explanation for this finding. He stated (Tr. 25):

> The undersigned has considered the records from Mental Health Care which were submitted subsequent to the oral hearing. After review of the evidence as a whole, the undersigned has been convinced that this report is not consistent with the evidence of record. During the interview, the physician reported that claimant was not having delusions and had no problem with comprehension. He had a normal IQ, was pleasant, and in a

> cooperative mood. The mental health physician gave claimant a GAF score of 30 which would show an individual unable to function in almost all areas and having delusions or hallucinations. This score is not supported by the description of claimant's ability to function as found in the treatment notes. This behavior is not consistent with the records submitted by treating physicians and school officials. I have given great weight to the opinion of the Mental Health Care officials with regard to their description of claimant's ability to function, but have not given weight to their GAF score which may possible [sic] be a typographical error when typed by staff. A GAF score this low does not correspond to the evidence of record, particularly the improvement seen in claimant when taking his medication as prescribed.

In sum, the law judge gave good cause for rejecting the GAF score of 30, and that explanation is supported by substantial evidence. The plaintiff has not acknowledged the law judge's explanation for rejecting this GAF score, much less refuted it. Therefore, the contention that the law judge improperly rejected the GAF score of 30 is undeveloped and baseless.[4]

---

[4]Further, as the Commissioner notes, a GAF score is of limited, if not questionable, value (Doc. 24, p. 11 n. 4). See Wind v. Barnhart, 2005 WL 1317040 at *6 n. 5 (11th Cir. 2005)(unpub. dec.); DeBoard v. Commissioner of Social Security, 2006 WL 3690637 at *3-4 (6th Cir. 2006)(unpub. dec.). Among other things, it only purports to reflect the plaintiff's overall functioning for that day. In this regard, it is noted that the GAF score of 30 was followed the very next day by a GAF of 60 (Tr. 461). A GAF of 60 indicates "moderate difficulty in social, occupational or school functioning," and is only one point below "mild" symptoms that indicate a person is "functioning pretty well." Diagnostic and Statistical Manual of Mental Disorders, (4th ed., Text Revision)(DSM-IV-TR), p. 34.

The plaintiff argues further that the law judge should have recontacted the author of this GAF score for clarification (Doc. 23, p. 11). This argument is similarly unpersuasive. On this issue, the regulations provide (20 C.F.R. 404.1512(e)):

> (e) Recontacting medical sources. When the evidence we receive from your treating physician ... is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.
>
> (1) .... We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

Under this regulation, the basic principle for recontacting the physician is that the evidence received is inadequate for a disability determination. Generally, it is only necessary to recontact a physician if there are gaps in the record. See Gallina v. Commissioner of Social Security, 2006 WL 3028228 (11th Cir. 2006)(unpub. dec.); Johnson v. Barnhart, 2005 WL 1414406 (11th Cir. 2005)(unpub. dec.). As the law judge's decision shows, he obviously did not think that the record was inadequate for him to make a ruling. Rather, he unequivocally rejected the GAF score of 30 because it was inconsistent with

the record evidence, and a law judge is not required to recontact a medical provider before discounting such a medical opinion. See 20 C.F.R. 416.927, 416.945 (law judge has the discretion to evaluate and weigh the medical evidence of record).[5]

B. The plaintiff also argues that the law judge did not make an adequate credibility determination regarding the plaintiff's testimony at the administrative hearing (Doc. 23, p. 8). Specifically, the plaintiff contends that the law judge "never made explicitly, or even sufficiently implicitly, clear as to which parts of her testimony were incredible and which were credible" and that he lacked cause for "downgrading" her credibility (id., pp. 8, 10). The plaintiff argues that, if her testimony was "fully credited[,] ... the [child] would easily achieve the standards for a finding of childhood disability" (id., p. 11).[6]

---

[5] Alternatively, the plaintiff asserts that "it would have been a prudent course of action for the Commissioner to utilize the services of a medical expert" (Doc. 23, p. 12, citing to HALLEX I-2-5-34, 1994 WL 637370). The HALLEX is a Hearings, Appeals and Litigation Law Manual which identifies numerous broad categories in which a medical expert's opinion may be helpful (see Doc. 23-2). As the plaintiff acknowledges, its provisions are not mandatory (Doc. 23, p. 13). Rather, it is an internal guidance manual whose provisions lack the force and effect of law. Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000). Therefore, this suggestion does not show that the law judge erred because he did not arrange for a medical expert at the hearing.

[6] The plaintiff concedes that the child's testimony was not critical to the credibility determination (Doc. 23, p. 11).

This credibility challenge will also be rejected for insufficient development. The plaintiff, in contravention of the scheduling Order, does not identify in her memorandum any portion of her testimony, much less specify the testimony that shows the child is disabled (Doc. 13).[7] In all events, this argument lacks merit because the law judge's credibility determination is implicit in his decision.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective symptoms. Dyer v. Barnhart, supra, 395 F.3d at 1210. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), this standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition

---

[7] A fully developed argument is necessary on this point because, even completely crediting the plaintiff's testimony, it appears that the evidence is insufficient to demonstrate that the child is disabled. See Wilkinson o/b/o Wilkinson v. Bowen, supra. The plaintiff acknowledged that, during her testimony, she was talking in generalities because of the presence of her son (Tr. 501). Thus, she testified that the child "has severe allergies" and "a lot of issues" due to obsessive compulsive behavior (Tr. 488-91). She added that the claimant has "a lot of difficulty following directions, rules;" that "it's a labor" to get him ready for school; and that he has "a lot of" conflicts with friends (Tr. 495, 498-99, 501). On the other hand, she acknowledged significant improvement in the claimant's functioning due to his medications (see Tr. 496). Further, she stated that he has a "very high IQ," that could result in placement in a class for gifted students (Tr. 497). Thus, the plaintiff's vague testimony, which generally alludes to many behaviors that are commonly displayed by children of that age, does not compel a finding of disability.

or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptoms]." If the law judge determines that there is objective medical evidence of an impairment which could reasonably be expected to produce the subjective symptoms, the law judge "must evaluate the credibility of claimant's testimony as to [the subjective symptoms], and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n. 6 (11th Cir. 1985). In other words, this credibility finding must be adequately explained. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). However, "this circuit does not require an explicit finding as to credibility," but rather findings may be made by implication if they are "obvious to the reviewing court." Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983).

The law judge recognized the proper standard for evaluating subjective complaints (Tr. 26). Further, he acknowledged the plaintiff's and the child's testimony in his evaluation of the evidence (Tr. 24-25). In this regard, the law judge stated (id.):

> The claimant's mother testified that claimant has allergy episodes 5-6 times a year and some are weather related. The claimant said that he liked

> school and his teachers. He liked being with other kids. He made good grades, but his home work was not good. The child said that he would get mad if he was in trouble or if someone hit him. He has to have everything a certain way, like tying his shoes. The claimant was suspended from school one time. Currently, his main problem in school is reading and writing. He does not like to be around a lot of noise.
>
> The undersigned has been persuaded that the claimant had a problem with his behavior at an early age. He apparently did not know how to share and play with other children. He had been very active, but since being placed on medication his behavior has improved considerably. His teachers reported that claimant could easily be redirected since on medication. He still gets frustrated with things that he does not like to do. H[is] teachers reported that he is [a] very bright child and functions best in a well structured environment. The school determined that claimant was able to perform successfully in a regular classroom and claimant said he made good grades. The undersigned finds claimant's mother as partially credible in her description of the child's functional limitations.

The plaintiff focuses on the law judge's statement that he found the plaintiff "partially credible in her description of the child's functional limitations," arguing that this is an insufficient credibility determination (Doc. 23, p. 10). The plaintiff's testimony at the administrative hearing was so general that the Commissioner argues that this credibility determination refers to the

plaintiff's description of the child's conduct in a "Function Report," not her testimony at the administrative hearing (Doc. 24, p. 14; Tr. 93-100).[8]

In all events, it is implicit in the law judge's decision that he rejected the plaintiff's hearing testimony to the extent that she asserted the child had greater limitations than he found. See Tieniber v. Heckler, supra, 720 F.2d at 1255. Further, the law judge set forth several factors which, taken together, support his credibility determination. In this respect, the law judge discussed the claimant's medical and school history (Tr. 22-25). He noted the specific statements of teachers and physicians who reported significant improvements in the claimant's behavior since being placed on medication (see Tr. 24, 25).

Moreover, the law judge's conclusions as to the plaintiff's credibility are reflected in the context of the law judge's discussion that the child does not functionally equal a listing. In this regard, he analyzed the evidence in terms of each of the six domains of functioning and supported the findings with specific record evidence (Tr. 28-30). The discussion set forth

---

[8] It is noted that the plaintiff's testimony does refer to some functional limitations (see, e.g., Tr. 495, 500-01, 504). Further, there are similarities in the functional limitations described by the plaintiff in the Function Report and her testimony at the administrative hearing (e.g., compare Tr. 98 with Tr. 500-01; compare Tr. 99 with Tr. 504).

with respect to those domains contains, to a large extent, information received from the plaintiff or that is consistent with her testimony. The plaintiff has not identified any testimony that would make a difference in the law judge's assessment of each domain.

Furthermore, there is evidence in the record that clearly contradicts the plaintiff's claim that the child is disabled. Thus, in the Spring of 2004, the plaintiff sought to obtain authority to operate a foster home (Tr. 314). A study into such an operation included whether the child would adversely affect foster care. Noting that the child's "behavior came under control [with medication] and has stabilized" (Tr. 316), the conclusion was that the child will not negatively impact the plaintiff's success as a foster parent (Tr. 317). This conclusion was based in part upon a positive letter from the child's treating psychiatrist (Tr. 307)

For these reasons, the law judge's credibility determination is reasonable and supported by substantial evidence. Significantly, the principle that, under the substantial evidence standard, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal" applies to credibility determinations. Adefemi v. Ashcroft, supra, 386 F.3d at 1027. The plaintiff clearly has not made a compelling showing

that the credibility determination was erroneous. The plaintiff, unlike the law judge who summarized the testimony (Tr. 24), did not set forth anything she, or the child, said at the hearing (see Doc. 23, pp. 8-11). Under these circumstances, the plaintiff has obviously not identified any testimony that was improperly rejected.

It is appropriate to add that the plaintiff asserts further that her testimony should be accepted as true (Doc. 23, p. 11). That assertion is meritless not only because the law judge made a reasonable credibility determination, but also because, as indicated, the plaintiff makes no attempt to show how her testimony, if fully credited, would result in a different decision. Thus, the plaintiff has not pointed to any testimony that would establish that she meets, medically equals, or functionally equals, a listed impairment.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision, which is supported by substantial evidence and contains no reversible error, is hereby AFFIRMED.

The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this __17th__ day of September, 2008.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE